UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BEVERLY RIVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09CV897 CDP |
| | ) |
| EDWARD D. JONES CO., et al., | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Beverly River brings this action under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et al.*, alleging defendants' decision to deny her accidental death benefits for the death of her husband, David Polk, was an abuse of discretion. David died after the motorcycle he was operating crashed. A state toxicology report performed after the accident revealed that David's blood alcohol content was 0.128%. At the time of his death, David was enrolled in two accidental death insurance policies through his employer, defendant Edward D. Jones & Co., L.P. Defendant Metropolitan Life Insurance Company was the claims administrator for these policies. Both policies contained an exclusion denying benefits if the participant died while intoxicated and operating a vehicle.

Soon after her husband's death, plaintiff filed for accidental benefits under both policies. The plan administrator denied her claims in part because of the intoxication exclusion. After she exhausted her appeals, plaintiff filed this action seeking judicial review of the denial of her claims. Both parties have filed cross-motions for summary judgment. Because I conclude that the administrator did not abuse its discretion, I will grant defendants' motion for summary judgment.

## **Background**

During the afternoon of September 22, 2007, plaintiff and her husband visited friends at Mark Twain Lake northwest of St. Louis, Missouri. They ate chips and sandwiches, and David consumed five Busch Lite Beers. In the later afternoon, David left the campsite on his motorcycle. At approximately 5:25 p.m., David was riding around a left curve when his motorcycle overturned, ejecting him. He struck a tree head first and died shortly afterward. The Ralls County coroner report stated that the cause of death was severe head trauma, and a certified toxicology report from the Missouri State Highway Patrol Crime Laboratory Division stated that David's blood alcohol content was 0.128%.

Before his death, David was employed with defendant Edward D. Jones & Co., L.P. Through his employment with Edward Jones, David was enrolled in the Edward D. Jones & Co. Employee Welfare Benefit Plan. As a part of this plan, David was automatically enrolled in Basic Accidental Death and Dismemberment

("AD&D") benefits, which provided up to $100,000 in benefits if he died accidentally. David also paid to enroll in Supplemental Accidental Death and Dismemberment benefits ("SD&D"), which also provided up to $100,000 in benefits if David died accidentally.

Both policies contained an intoxication exclusion in the underlying certificate of insurance, which provided that benefits would not be paid "for any loss if the injured party is intoxicated at the time of the incident and is the operator of a vehicle or other device involved in the incident." The plan defined intoxication as when "the injured person's blood alcohol level met or exceeded the level that creates a legal presumption of intoxication under the laws of the jurisdiction in which the incident occurred." David did not receive a copy of the plan, but instead received a Summary Plan Description ("SPD"), which outlined the plan's benefits and exclusions. Like the plan's intoxication exclusion, the SPD provided, in a section entitled, "**What's Not Covered**," that AD&D benefits would not be paid if the participant died "as a result of . . . intoxication while operating a vehicle or other device involved in the accident." Similarly, in the "**What's Not Covered**" section for SD&D benefits, the SPD detailed that supplemental benefits would not be paid if the participant died "as a result of . . . while intoxicated or under the influence of controlled substances (not administered

- 3 -

by a doctor)." Unlike the policies themselves, the SPD did not define intoxication in either section.

Soon after her husband's death, plaintiff submitted claims for benefits under both policies. The plan administrator denied the claims in several letters, citing the plan's intoxication exclusion and the state toxicology report indicating David's blood alcohol content. The administrator also noted that the police report from the accident revealed that the weather was clear and the road surface was dry on that day. The claims were denied on several other grounds, including the plan's exclusions for self-inflicted injuries and for deaths that were not solely accidental. Plaintiff challenged these denials with evidence that David did not appear intoxicated to her or their friends before his accident, but the administrator confirmed the denial upon review. Plaintiff filed this complaint in June of 2009, seeking judicial review of the denial. The parties have now filed cross motions for summary judgment.

## **Discussion**

The standards for summary judgment are well settled. Summary judgment should issue if the evidence on file shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v Carrett*, 477 U.S. 317, 322 (1986). When considering a

party's motion for summary judgment, the court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party establishes the absence of a genuine issue of fact and that she is entitled to judgment as a matter of law, the nonmoving party may not rest on the allegations in the pleadings but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material facts exists. Fed. R. Civ. P. 56(e).

Plaintiff brings this case under 29 U.S.C. § 1132(a)(1)(B), seeking to recover benefits under the terms of the plan. As both parties agree, the plan at issue in this case gave the plan administrator discretion to determine eligibility for benefits and to construe the plan's terms. Accordingly, I must review the administrator's decision for an abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Conkright v. Frommert*, 130 S. Ct. 1640, 1649-50 (2010) (court must review a plan administrator's decision for abuse of discretion when plan gave her authority to make eligibility determinations, even if she made a mistake in interpreting the plan); *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008) (plan administrator entitled to deference when plan gives her authority to determine eligibility for benefits, even if a conflict of interest exists because of her ability to determine eligibility and her

authority to issue benefits payments); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc).

Under the abuse-of-discretion standard, a plan administrator's decision will not be disturbed if it is reasonable[1] and supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *King*, 414 F.3d at 999-1000 (citations omitted). Because ERISA requires a plan administrator to set forth the specific reasons for a denial of benefits to plan participants and beneficiaries, *see* 29 U.S.C. § 1133, the Eighth Circuit has "refused to allow claimants to be sandbagged by after-the-fact plan interpretations devised for the purposes of litigation." *King*, 444 F.3d at 999 (internal quotation marks and citation omitted).

Plaintiff raises several challenges to the denial of her claim for benefits. Specifically, she claims that (1) the SPD failed to include sufficient information under 29 U.S.C. § 1022(b) because it failed to define "intoxication," and David

---

[1]The Eighth Circuit has articulated several factors for considering whether an administrator's interpretation is reasonable, including (1) whether the interpretation is consistent with the plan's goals; (2) whether the interpretation renders any language of the plan meaningless or internally inconsistent; (3) whether the interpretation conflicts with ERISA; (4) whether the plan administrator has interpreted words consistently; and (5) whether the interpretation is contrary to the plan's clear language. *Finley v. Special Agents Mut. Fund Benefit Assoc. Inc.*, 957 F.2d 617, 621 (8th Cir. 1992). Although these factors inform a court's analysis, "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts not may replace with an interpretation of their own." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (internal quotation marks and citations omitted).

relied on the absence of the definition to his detriment; and (2) the SPD conflicted with the underlying plan[2].

Under 29 U.S.C. § 1022(a), an SPD must be "written in a manner calculated to be understood by the average plan participant" and must be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Accordingly, an SPD must contain information about "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* § 1022(b); *see also* 29 C.F.R. § 2520.102-3; *Dodson v. Woodmen of the World Life Ins. Soc'y*, 109 F.3d 436, 439 (8th Cir. 1997) (plan violated section 1022(b) when it failed to inform the insured of a time limit for filing claims, because the time limit was a circumstance that could result in disqualification); *but see Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1021-22 (7th Cir. 1998) (SPD satisfied section 1022 when it informed participant that the plan did not cover "circumstances when a disease is the sole cause of death").

---

[2]Plaintiff also contends that the administrator abused its discretion by denying benefits because it determined that (1) David's death was not accidental, and (2) he died as a result of self-inflicted injuries. Under both policies, benefits would not be paid if a participant's death was not accidental or was self-inflicted. Plaintiff contends the denial of her claims under these exclusions was neither reasonable nor supported by substantial evidence. However, I need not reach these issues, because I determine that the administrator did not abuse its discretion by denying plaintiff's claims because of the intoxication exclusion. *See Rekowski v. Metropolitan Life Ins. Co.*, 417 F. Supp. 2d 1040, 1042 (W.D. Wis. 2006) ("Defendant is entitled to summary judgment because it did not act arbitrarily and capriciously by invoking the plan's exclusion for intoxication as a basis for denying plaintiff's claim. In light of this conclusion, I will not address the three other grounds on which defendant denied plaintiff's claim.")

Even if an SPD is faulty for failing to satisfy section 1022, however, a plaintiff must show "some significant reliance on, or possible prejudice flowing from the summary." *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 984 (8th Cir. 1992); *accord Greeley v. Fairview Health Servs.*, 479 F.3d 612, 614-15 (8th Cir. 2007) ("[A]ssuming *arguendo* that the February 1998 memorandum was a faulty SPD, [plaintiff] must show that he took action or failed to take action, that he would not have otherwise, resulting in some detriment.").

As mentioned above, plaintiff first contends that the SPD failed to adequately apprise participants of circumstances resulting in the denial of benefits, as required by section1022, because it failed to define intoxication. I disagree. Consistent with section 1022, an average plan participant reading this SPD would understand that benefits would be denied if she died as a result of operating a vehicle while intoxicated, as it is defined within the statute prohibiting drunk driving. *See* 29 U.S.C. § 1022; *compare Dodson*, 109 F.3d at 439 (SPD violated section 1022 when it failed to inform participants about time limits for filing claims at all). Nothing more is required. *See Mers*, 144 F.3d at 1021-22.

Even if I were to conclude that this SPD was faulty, however, plaintiff has not shown detrimental reliance. *See Greeley*, 479 F.3d at 614-15. Plaintiff contends that she has shown sufficient prejudice or reliance because the SPD was the only document she and her husband received, and ERISA requires SPDs to be

sufficiently detailed. However, this alone is an insufficient showing of detrimental reliance, and plaintiff points to no action resulting in a detriment to her or her husband that they would or would not have taken if she had known that the terms of the plan were otherwise. *See Greeley*, 479 F.3d at 614-15; *compare Dodson*, 109 F.3d at 439 (sufficient showing of detrimental reliance on faulty SPD when plaintiff would have filed his claim for benefits within the time limit for doing so if he had known about the time limit's existence). For instance, plaintiff does not adduce evidence that her husband would not have ridden his motorcycle while intoxicated if he had known the plan defined intoxication as having a blood alcohol level that exceeded the Missouri state level. Without such an evidentiary showing, her claims for benefits must fail. *See Greeley*, 479 F.3d at 615 (reversing district court's grant of summary judgment in favor of plaintiff when he offered no evidence that "he changed his course of action or otherwise relied on the faulty SPD").

Finally, plaintiff claims that the SPD's language conflicted with the plan's intoxication exclusion. Specifically, she contends that the two documents conflicted because the SPD stated that benefits would be denied if the participant died "as a result of" intoxication while operating a vehicle, but the plan denied benefits if the participant was intoxicated at the time of death and was the operator of a vehicle involved in the accident. According to plaintiff, the SPD's language

- 9 -

required the administrator to make a determination that the participant's intoxication caused his death. By contrast, plaintiff contends, the plan's language only required the administrator to determine whether the participant was intoxicated and the operator of the vehicle involved in the accident causing death.

Within the Eighth Circuit, it is well settled that summary plan provisions prevail "as a matter of law" if they conflict with formal plan provisions. *Marolt v. Alliant Techsys., Inc.*, 146 F.3d 671, 621 (8th Cir. 1998). This is so because one of ERISA's purposes is to ensure that administrators adequately disclose key plan terms in a manner capable of being understood by an average plan participant. *See* 29 U.S.C. § 1022; *Marlot*, 146 F.3d at 621. Even if I concluded that the SPD's and plan's intoxication exclusion provisions conflicted, however, there is sufficient evidence in the record supporting the administrator's decision under both the SPD and the underlying plan. Specifically, in its letters to plaintiff denying benefits, the administrator cited the toxicology report revealing that David's blood alcohol content at death was 0.128%, and the police report indicating that the weather was clear and the road surface was dry. The administrator also cited the widely known dangers of driving while intoxicated, including the "impairment of a driver's physical and mental reactions due to excessive alcohol consumption." Based on these facts, the administrator concluded that plaintiff's claim for benefits "must be denied." Similarly, the letter

affirming the denial of benefits noted that David's intoxicated state "was a contributing factor" causing his death.

It is clear from its letters that the administrator determined David was intoxicated while operating his motorcycle, and that his intoxication caused his crash and death. This evidence supported the denial of benefits under the intoxication exclusion provisions in the SPD as well as the underlying plan.[3] As a result, the decision denying benefits was not an abuse of discretion, and I must grant summary judgment to defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#19] is granted, and plaintiff's complaint is dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [#22] is denied.

---

[3]In her reply brief, plaintiff also challenges the sufficiency of the evidence supporting the plan administrator's decision denying benefits. Specifically, she contends that (1) there is a risk that David's blood alcohol content level was inaccurate, because there is no evidence of when the blood sample was taken from David; and (2) the death certificate does not indicate that intoxication caused David's death, but rather lists blunt force trauma as the cause of death. But a district court reviewing an administrator's decision for an abuse of discretion must not reverse that decision if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal citations and quotation marks omitted). After reviewing the entire record, I conclude that there is substantial evidence – including plaintiff's own admission that David consumed five beers in the hours before his crash – supporting the administrator's decision. *See id.*

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of June, 2010.